IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SCOTT P. BARRETT,
    *Plaintiff*,

v.

MICHAEL A. DALY,
    *Defendant*

Civil Action No.
22-cv-2194-ABA

**MEMORANDUM OPINION AND ORDER**

Plaintiff Scott Barrett and Defendant Michael Daly settled this personal injury action, with Defendant (and his insurer) agreeing to pay $212,500. But that payment was misdirected to a person fraudulently posing as Plaintiff's counsel and paralegal, after Defendant's prior counsel, on behalf of Mr. Daly and his insurer, agreed to redirect the payment.[1] The parties dispute who, other than the fraudster(s), may be at fault. Mr. Daly, for example, contends that because his prior counsel allegedly was duped into redirecting the payment, he should be deemed to have already performed his obligations under the settlement agreement or otherwise be excused from doing so, or PK Law (or Plaintiff's counsel, The Law Offices of Steve H. Heisler ("Heisler Law")) should be held liable to fund the settlement. There is no dispute, however, that although Defendant paid $212,500, he did not pay it to Plaintiff, as required under the parties' settlement agreement. The Court finds that no hearing is necessary. *See* Loc. R. 105.6; *Hensley v. Alcon*

---

[1] Defendant's counsel at the time of the settlement conference and events at issue was Pessin Katz Law, P.A ("PK Law"). PK Law has withdrawn from the representation, and is no longer counsel to Defendant, who is represented by new counsel.

*Labs., Inc.*, 277 F.3d 535 (4th Cir. 2002).[2] For the reasons that follow, the Court will grant Mr. Barrett's motion to enforce the settlement.

I.     **RELEVANT FACTS AND PROCEDURAL HISTORY**

The underlying lawsuit arises from a motor vehicle-related personal injury that occurred on May 31, 2020. Compl. ¶¶ 8-10, ECF No. 1. Defendant Daly was insured by Westfield Insurance Company ("Westfield"). And as of March 28, 2023, this case was like any of the hundreds that settle each year following a settlement conference before a Magistrate Judge of this Court. The parties reached an agreement as to the terms of settlement at a mediation held on March 28, 2023, after which the Court entered a "Settlement Order (Local Rule 111)." ECF No. 23. That order, as contemplated by Local Rule 111, provided that with the parties having "advised . . . that the above action has been settled," the action was dismissed "without prejudice to the right of a party to move for good cause within 30 days to reopen this action if settlement is not consummated," with such dismissal to convert to a dismissal with prejudice "[i]f no party moves to reopen." ECF No. 23.

The parties then negotiated and finalized a settlement agreement, which was circulated for signature on March 30, 2023.[3] In the agreement, Mr. Daly (or an insurer on his behalf) was

---

[2] In *Hensley*, the Fourth Circuit explained the circumstances in which a court, before granting a motion to enforce a settlement agreement, must hold a hearing. 277 F.3d at 541. Here, there is no dispute that the settlement agreement that Plaintiff seeks to enforce, and alleges was breached, required Defendant to pay $212,500 to "Scott Barrett and his attorneys, The Law Offices of Steve H. Heisler." ECF No. 35-7 ¶ 2.1. There is also no dispute that that agreement is enforceable. Because there is no "factual dispute over the existence of an agreement, over the authority of attorneys to enter into the agreement, or over the agreement's terms," no hearing is necessary before granting Plaintiff's motion. *Hensley*, 277 F.3d at 541.

[3] The version of the settlement agreement that has been filed does not include a signature by Defendant Daly or his counsel, but rather only signatures by Plaintiff Barrett and his counsel. *See* ECF 35-7 at 7. Defendant does not dispute, however, that he agreed to be bound by that original settlement agreement. *See* ECF No. 39 at 1, ¶¶ 2-3.

required to pay $212,500 to "Scott Barrett and his attorneys, The Law Offices of Steve H. Heisler." ECF No. 35-7 ¶ 2.1.

Mr. Daly's insurer, through counsel, intended, and tried, to pay Mr. Barrett the settlement amount. However, also on March 30, 2023, one or more individuals began fraudulently intercepting the parties' emails concerning document finalization and payment of the settlement amount, and began impersonating a paralegal associated with Heisler Law, Mr. Barrett's counsel. The imposters diverted emails sent by PK Law to Heisler Law so that the imposters received the emails instead of Mr. Barrett's actual counsel; the imposters then responded to the emails pretending to be members of Heisler Law. ECF No. 35-5 at 1-21. In these emails, the imposters demanded from PK Law that the settlement payment be sent by ACH or wire transfer rather than by check. *Id.* at 17-21. Counsel from PK Law told the imposters that Westfield's "adjuster is unable to wire payments" and that "[o]nce the signed release is received, our adjuster will send the check directly to your office." *Id.* at 18. The imposters responded that they "no longer receive Check at the moment that is why we are requesting an ach or wire transfer." *Id.* at 17 (grammatical errors in original).

Ultimately, the imposters agreed to accept a check but instructed that it be sent to and made payable to "Lamp Holdings, LLC" at an address in Chicago, Illinois. *Id.* at 14-15. Plaintiff is not associated with Lamp Holdings, and this was the first time this entity was mentioned between the parties. PK Law responded that Westfield, Defendant's insurer, "will agree" to deviate from the original payment instruction and instead to make the check payable to Lamp Holdings, "but will require an amended release to include the new payee information signed by Mr. Barrett." *Id.* at 12. PK Law then sent an amended version of the settlement agreement to the imposters on April, 3, 2023, in which Westfield (on behalf of Mr. Daly) now agreed to pay

3

$212,500 to "Lamp Holdings, LLC, on behalf of Scott Barrett and The Law Offices of Steven H. Heisler." ECF No. 35-6 ¶ 2.1.

The imposters forged Mr. Barrett's signature on the amended agreement and sent it back to PK Law the next day. ECF No. 35-5 at 11. However, the agreement that the imposters "signed" is still dated March 30, 2023, the same date that the original agreement was signed. *Compare* ECF No. 35-6 at 7 *with* ECF No. 35-7 at 7. The imposters thereafter began pestering PK Law multiple times for the overnight tracking number for the check. ECF No. 35-5 at 7-11. At this point, the imposters were impersonating both the paralegal and Plaintiff's counsel. *Id.*

The imposters told PK Law that they received the check on April 7, 2023, after which PK Law drafted a stipulation of dismissal, to formally notify the Court that the parties had consummated the settlement and the dismissal without prejudice (pursuant to the Court's earlier Local Rule 111 order) would thereby become a dismissal with prejudice. *Id.* at 5. An attorney at PK Law then sent a draft stipulation to the imposters (believing she was sending it to Heisler Law). *Id.* at 4. On April 13, 2023, the person posing as Mr. Heisler's paralegal wrote, "Please you can sign the stipulation of dismissal" and "file if you have not already done so." *Id.* at 2. Defense counsel then filed a "Stipulation of Dismissal With Prejudice" with electronic signatures from Defendant's counsel Paul Finamore and "Steven H. Heisler (with consent)," ECF No. 24, although, as the parties later learned, Mr. Heisler had not consented to the filing.

The imposters then continued badgering PK Law to confirm that the check had cleared, to defense counsel's obvious annoyance. *Id.* at 1 (PK Law attorney responding to the imposters that "respectfully, it is not our problem if you are having an issue with the payee. We would much [have] preferred to have made the check payable to your office but you made some reference that you could not receive checks, frankly something I have never heard of before");

4

*id*. at 3 ("Respectfully, we cannot continue to address daily emails on this matter. You have confirmed that the check was received. We cannot control when it will clear, and I cannot ask my client, which writes many checks on a daily basis, to have its Accounting Department drop everything to look at this on a daily basis."). Ultimately, the check did clear, and the imposters absconded with the settlement funds.

The imposters were later arrested by authorities, and a criminal case is proceeding against them in the U.S. District Court for the Northern District of Ohio. *See* Second Superseding Indictment, *United States v. Okereke et al.*, 23-cr-122-JRK, ECF No. 59 (N.D. Oh. Nov. 1, 2023); *see also id.* ¶ 10(h) (identifying one act in furtherance of the alleged conspiracy as: "On or about April 3, 2023, a co-conspirator caused Victim Business 5 of Westfield Center, Ohio, to send via overnight courier a check for $212,500 payable to Lamp Holdings LLC"). No trial date has yet been set.

From the beginning of the fraudulent activity on March 30, 2023, the fake emails, in which the imposters were posing as Plaintiff's counsel and paralegal, repeatedly triggered PK Law's "automatic phishing policy and were quarantined." ECF No 35-5 at 16. PK Law, however, did not, for example, contact Mr. Barrett's counsel by phone. Instead, PK Law removed the fraudulent emails from quarantine and replied to them without further confirmation of their legitimacy. *Id.* The imposters even provided guidance on how to keep the fraudulent emails out of PK Law's "spam folder," advising counsel to "go to your spam folder and move it into inbox and it will be resolved." *Id.* at 15 & 17. PK Law responded that the issue "was not as simple as clearing it out of spam, unfortunately. [We] are familiar with that simple fix. We had to have your email address cleared through IT for whatever reason." *Id.* at 15. Once PK Law's IT

department circumvented the firm's security system, the imposters' emails were no longer flagged.

On May 9, 2023, Plaintiff's counsel, Mr. Heisler, called PK Law to inquire about the payment, since he had not received it. ECF No. 39-1 at 6. Defendant states that its former counsel at PK Law "did not learn of the fraud" until Mr. Heisler's voicemail, at which point the firm began investigating what happened. *Id*. On May 13, 2023, Plaintiff filed an initial motion to enforce the settlement. ECF No. 26. Defendant opposed the motion, arguing that "Defendant, his insurance company and undersigned counsel abided by the terms of the settlement and Defendant's insurer issued a check in the amount of $212,500.00 after exchange of a signed release." ECF No. 27 ¶ 5. Defendant further contended that it appeared that Plaintiff's counsel's "IT system" had been "hacked," and further contended that neither "Defendant, his insurer or his undersigned counsel" had been "the subject of a cyber attack." *Id.* ¶ 16. In reply, Plaintiff noted, among other things, that "there is at least one forensic investigation underway, as well as investigations by the FBI and United States Secret Service." ECF No. 30 at 2.

The Court (Judge Gesner) denied Plaintiff's motion without prejudice, holding that "it is appropriate to defer consideration of plaintiff's Motion until after the completion of sufficient investigation to provide this court with a sufficient understanding of the facts on which to consider the relief requested." ECF No. 34. Later, Mr. Barrett filed the pending second motion to enforce the settlement. ECF No. 35. Mr. Daly filed a response, ECF No. 39, and the Court ordered the parties to file supplemental briefs, which they did. ECF Nos. 42, 43, & 44.

The parties then negotiated an agreement to partially resolve the open dispute, and get Mr. Barrett paid the portion of the original settlement to which he (as opposed to his counsel and third-party lien holders) was entitled. In February/March 2024, the parties (Mr. Barrett and Mr.

Daly), along with PK Law, Heisler Law and Westfield (designated as "Interested Part[ies]"), signed a separate "Settlement and Release." ECF No. 55-2. The Court will refer to this agreement as the "Partial Amended Agreement," which is the third settlement "agreement" in this case. The first was the original March 2023 settlement agreement, which the Court will refer to as the "Original Agreement." ECF No. 35-7. The second was the fraudulently modified agreement, orchestrated by the imposter(s), amending the payment recipient provision from "Scott Barrett and his attorneys, The Law Offices of Steve H. Heisler" (ECF No. 35-7 ¶ 2.1) to "Lamp Holdings, LLC, on behalf of Scott Barrett and The Law Offices of Steven H. Heisler" (ECF No. 35-6 ¶ 2.1). The Court will refer to that one as the "Fraudulent Amendment." Finally there is the Partial Amended Agreement from March/April 2024.[4]

In the Partial Amended Agreement, Defendant and the Interested Parties (PK Law, Heisler Law, and Westfield) agreed to pay $134,760.79 to Mr. Barrett himself, as "settlement of Plaintiff's claims in this suit." ECF No. 55-2 ¶ 2. Mr. Barrett executed a "final release" with respect to Defendant and the Interested Parties, and further agreed, with respect to $2,726.50 in outstanding liens, to "satisfy the liens himself" but that they would be "reimbursed . . . by one or all of the Interested Parties" once the disputes regarding payment of the remaining $77,739.21 due under the Original Agreement ($212,500 minus the $134,760.79 being paid under the Partial Amended Agreement) were resolved. *Id.* at 3-4.

The parties, along with the Interested Parties to the Partial Amended Agreement, attempted to mediate these remaining disputes, through a settlement conference held on April 23, 2024. They were unable to resolve "how the reissuance of the settlement payment," *i.e.*, the

---

[4] Plaintiff Barrett signed the Partial Amended Agreement on February 28, 2024. At least Law Office of Steven H. Heisler signed it on March 6, 2024. The parties have not filed the other signature pages.

remaining $77,739.21 due under the Original Agreement, "should be allocated" among "Heisler Law, PK Law, and Westfield." ECF No. 55 at 2. After this development, the Court ordered the parties to submit additional briefing, which they have done. ECF Nos. 53, 54, & 55.

## II. DISCUSSION

### A. Jurisdiction and Standing

Before reaching the merits of Plaintiff's enforcement motion, Defendant has raised a threshold issue. Defendant argues that because Mr. Barrett has been paid pursuant to the Partial Amended Agreement, and only his counsel remains unpaid, this Court lacks subject matter jurisdiction given that (1) the case was dismissed with prejudice and without retaining jurisdiction over the settlement agreement, and (2) Mr. Barrett, the sole plaintiff in the case, no longer has a stake in the case. ECF No. 55 at 8 n.4. Relatedly, Mr. Daly argues that because Plaintiff's *counsel* (Heisler Law) is not a party to the case, and because the bulk of the as-yet-unpaid portion of the settlement is to be paid as attorneys' fees, Plaintiff's counsel lacks standing to pursue the remaining portion of the settlement fund. *Id.* at 6-8.

The Court disagrees, and concludes that it retains ancillary jurisdiction to adjudicate the dispute between Defendant and Plaintiff's counsel. Ancillary jurisdiction "focuses on 'the power [of federal courts] to enforce their judgments and ensur[es] that they are not dependent on state courts to enforce their decrees.'" *Butt v. United Bhd. of Carpenters & Joiners of Am.*, 999 F.3d 882, 887 (3d Cir. 2021) (quoting *Nat'l City Mortg. Co. v. Stephen*, 647 F.3d 78, 85 (3d Cir. 2011)); *see also Marino v. Pioneer Edsel Sales, Inc.*, 349 F.3d 746, 752 (4th Cir. 2003) ("It is well-settled that a federal court may exercise ancillary jurisdiction to enforce its judgments.") (citing *Peacock v. Thomas*, 516 U.S. 349, 354 (1996)). "[A]ncillary enforcement jurisdiction exists 'to enable a court to function successfully, that is, to manage its proceedings, vindicate its

authority, and effectuate its decrees.'" *Butt*, 999 F.3d at 887 (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994)). "'It is well established that [under ancillary jurisdiction] a federal court may consider collateral issues after an action is no longer pending,' including 'motions for costs or attorney's fees.'" *Id.* at 887-88 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990), and citing *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 451 n.13 (1982)).

In *Butt*, the Third Circuit held that the district court did not abuse its discretion in adjudicating a fee dispute between the plaintiffs' former and current counsel after the underlying case had been settled and dismissed with prejudice, and without the court expressly retaining jurisdiction over the settlement agreement. *Id.* at 885-86. The Third Circuit considered several factors in concluding that ancillary enforcement jurisdiction was appropriate, which are also present here.

First, the remaining dispute in this case involves Plaintiff's counsel, Defendant's counsel, and Defendant's insurer. In *Butt*, the Third Circuit found that because the dispute was between counsel of record in the case (and did not involve any attorneys who had not participated in the action), exercising jurisdiction was appropriate. *Id.* at 888-89. Given that the parties and counsel to the instant dispute were intimately involved in the underlying case, the Court concludes this factor weighs in favor of exercising jurisdiction.

Second, in this case, the Partial Amended Agreement provides that Mr. Barrett is required to pay the $2,726.50 in medical liens out of his award, but he will be reimbursed by one of the "Interested Parties," which includes PK Law, Westfield, and Heisler Law. *See* ECF No. 55-2 § III.4. Thus, although Mr. Barrett has largely received what he was promised, he is still tied to the outcome of this final dispute. Likewise, the Third Circuit in *Butt*, in discussing the holding of an

earlier case, *Novinger v. E.I. DuPont de Nemours & Co.*, 809 F.2d 212 (3d Cir. 1987), noted that in *Novinger* when "the former counsel was attempting to obtain a portion of the client's fund, the underlying case could not be fully resolved without a determination as to the fees." *Butt*, 999 F.3d at 888. The fact that Mr. Barrett is still affected by the outcome of this dispute further supports the Court's exercise of ancillary jurisdiction.

For these reasons, the Court finds the reasoning in *Butt* persuasive and that jurisdiction and standing exist to adjudicate Plaintiff's enforcement motion.

**B.     Enforcement of the Settlement Agreement**

Unfortunately, this is not the only time imposters have stolen settlement funds by duping participants in a settlement into redirecting the funds. Courts have wrestled with how to address these debacles. Some have applied a straightforward contract law analysis, enforcing the terms of a settlement agreement even though a party (typically a defendant) has already disbursed funds to the imposters, and leaving for another day (or proceeding) questions of whether some party other than the defendant should bear the loss. *See, e.g.*, *Peeples v. Carolina Container, LLC*, No. 19-cv-21-MLB, 2021 WL 4224009, at *7 (N.D. Ga. Sept. 16, 2021); *2 Hail, Inc. v. Beaver Builders, LLC.*, No. 16-cv-32847, 2017 WL 7086784, at *1 (Colo. Dist. Ct. Nov. 29, 2017). Others have applied a framework crafted originally in *Bile v. RREMC, LLC*, No. 15-cv-051, 2016 WL 4487864 (E.D. Va. Aug. 24, 2016), finding applicable or persuasive a rule from the Uniform Commercial Code (UCC) that governs negotiable instruments, UCC § 3-420, known as the "imposter rule." *See Beau Townsend Ford Lincoln, Inc. v. Don Hinds Ford, Inc.*, 759 F. App'x 348, 356-57 (6th Cir. 2018) (applying *Bile*); *Arrow Truck Sales, Inc. v. Top Quality Truck*

*& Equip., Inc.*, No. 14-cv-2052-T-30TGW, 2015 WL 4936272, at *5-*6 (M.D. Fla. Aug. 18, 2015) (same).

This Court concludes that Plaintiff's enforcement motion only requires the Court to reach the breach-of-contract analysis. "[S]ettlement agreements are enforceable as independent contracts, subject to the same general rules of construction that apply to other contracts.'" *Trustees of Iron Workers Loc. Union No. 5 & Iron Workers Emps. Ass'n, Emp. Pension Tr. v. Moxy Misc. Metals, LLC*, No. 17-cv-3285-PWG, 2019 WL 4536514, at *1 (D. Md. Sept. 19, 2019) (quoting *Maslow v. Vanguri*, 896 A.2d 408, 419 (Md. App. 2006)). Under the Original Agreement, Mr. Daly was required to pay the negotiated amount, $212,500, to "Scott Barrett and his attorneys, The Law Offices of Steve H. Heisler." ECF No. 35-7 ¶ 2.1. Although Westfield, on Mr. Daly's behalf, sent $212,500 to *someone*, it turns out that "someone" was not "Scott Barrett and his attorneys, The Law Offices of Steve H. Heisler," but rather the imposters who have subsequently been indicted for the fraud (as well as for, apparently, other similar frauds).

Mr. Barrett argues that Mr. Daly breached the settlement agreement by failing to pay the negotiated amount to "Scott Barrett and his attorneys, The Law Offices of Steve H. Heisler." Under Maryland law, a claim for breach of contract requires a "contractual obligation, breach, and damages." *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 307 (4th Cir. 2020) (quoting *Kumar v. Dhanda*, 17 A.3d 744, 749 (Md. App. 2011), *aff'd*, 43 A.3d 1029 (Md. 2012)). There is no dispute that the Original Agreement contained sufficiently clear terms to be enforceable. There also is no dispute that neither Mr. Daly, nor his insurer or anyone else on his behalf, paid Mr. Barrett the full settlement amount. That constitutes a clear and material breach of the Original Agreement. Mr. Barrett is entitled to the benefit of his bargain: enforcement of the Original Agreement as written. *See Hensley v. Alcon Lab'ys, Inc.*, 277 F.3d 535, 540-41 (4th

Cir. 2002) ("[T]o exercise its inherent power to enforce a settlement agreement, a district court (1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions.").

The fact that PK Law, and the imposters, later created the Fraudulent Amendment—which none of the parties contend is enforceable—does not change the fact that the parties are bound by the Original Agreement to pay Mr. Barrett $212,500, offset by the $134,760.79 that was paid pursuant to the Partial Amended Agreement. Nonetheless, Defendant, along with PK Law and Westfield (collectively, "Respondents"), assert two arguments for why Plaintiff's motion to enforce the Original Agreement should be denied.

First, Respondents have argued that enforcement of the Original Agreement is (or at least as of last fall) was "premature because law enforcement investigations remain active and ongoing." ECF No. 39-1 at 1. "Maryland law provides that '[c]ontracts may be subject to rescission on a finding of fraud, duress, undue influence, or negligent misrepresentation in their making.'" *Erie Ins. Co. v. WAWGD, Inc.*, Case No. 22-cv-1783-EA, 2024 WL 1856155, at *4 (D. Md. April 29, 2024) (quoting *Hale v. Hale*, 66 Md. App. 228, 233 (1986)). "Such a finding, however, must be based on an action that occurred in the *making* of the contract." *Id.* Here, as in *Erie*, "the uncontested facts establish that the imposter's actions had no impact upon the parties' manifestation of assent or understanding of the terms of settlement because the imposter's actions occurred after the contract had already been formed." *Id.* To be sure, the criminal case in the Northern District of Ohio is ongoing. That case may or may not result in orders of restitution or forfeiture. But "[t]he third party's fraudulent misrepresentations, which resulted in the diversion of the settlement [payment] to an unidentified bad actor, affected only performance under the settlement agreement, not its formation." *Id.*

Second, Respondents argue that Defendant should be excused from performance under the Original Agreement by virtue of the "imposter rule" under Article III of the Uniform Commercial Code. *See* ECF No. 39-1 at 5-7. Maryland has adopted UCC Article III. Md. Commercial Law Code § 3-101 *et seq.* (2023). Article III applies to "negotiable instruments," a term defined by § 3-104, and includes most checks. *See* Md. Commercial Law Code § 3-104(a), (c), (f). Here, Defendant's insurer made the settlement payment via check, made out to the imposters. ECF No. 40 (check from Westfield to "Lamp Holdings LLC" for $212,500). Under § 3-404 of the Code, if an "imposter . . . induces the issuer of an instrument to issue the instrument to the imposter," and/or the maker of the check "does not intend the person identified as payee to have any interest in the instrument," then the "imposter rule" applies. *Id.* § 3-404(d). Under that rule, if (1) a person "paying the instrument" has "fail[ed] to exercise ordinary care in paying . . . the instrument," and (2) "that failure substantially contributes to loss resulting from payment of the instrument," then "the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss." *Id.* § 3-404(d).

There is no dispute that "Mr. Daly himself bears no fault for the fact that the settlement payment did not reach Plaintiff or his counsel." ECF No. 44-1 at 4. Accordingly, Defendant invokes the "imposter rule" and argues that he should be excused from performance under the Original Agreement because "fault for this situation lies at the feet of the cybercriminal who perpetrated the fraud and potentially also the counsel responsible for negotiating the settlement who failed to prevent it." ECF No. 39-1 at 5; *see also id.* (quoting *Beau Townsend Ford Lincoln,* 759 Fed. App'x at 357, for the proposition that "losses attributable to fraud should be borne by the party in the best position to prevent the fraud"). Defendant relies in particular on *Bile*, 2016

13

WL 4487864, at *5, which applied a version of the imposter rule.[5] Defendant argues that Heisler Law is at least partially at fault for having failed to prevent or detect that the imposters had "infiltrated" the firm's "email system." ECF No. 44 at 1. Defendant further argues that PK Law is at least partially at fault for, for example, having circumvented its email security software, and having ignored alleged red flags such as the imposters' insistence on a wire transfer, their assertion that they could "no longer receive Check" (which counsel at PK Law specifically stated was "something [he] ha[d] never heard of before," ECF No. 35-5 at 1), the change in payee to a wholly unrelated entity, the poor grammar and odd phrasing throughout the emails, and the imposters' strange insistent and repeated emails asking for payment confirmation. ECF No. 39-1 at 5-7.

UCC Article III may very well apply to the fraudulently misdirected payment, which Westfield sent by check. But the Court need not decide whether Article III does apply, because even if the imposter rule in Article III were to apply, the Court is not persuaded that it creates a defense to liability for Defendant's breach of the Original Agreement. UCC § 3-404(d) creates a *cause of action* for a person who has borne a "loss" resulting from someone's "failure to exercise ordinary care" in "paying" a "negotiable instrument" to an "imposter." Md. Commercial Law Code § 3-404(d); *see also Versus Evil LLC v. PNC Bank, N.A.*, 613 F. Supp. 3d 916, 924 (D. Md. 2020) ("Section 3-404 provides a cause of action against a party who fails to exercise ordinary care in paying or taking a check."). Insofar as Mr. Daly (or Westfield or PK Law on his behalf)

---

[5] In *Bile*, that required creating a common-law rule, because the payment at issue was a wire transfer, which undisputedly was not a negotiable instrument. Nonetheless, the court in *Bile* held that where an imposter has diverted a settlement payment, "the parties' material failure (or its converse, substantial performance) shall be determined by examining whether they acted in accord with principles of ordinary care as characterized in U.C.C. § 3–404 and § 3–406." 2016 WL 4487864, at *10.

ends up "bearing the loss" here, if that loss bearer believes that some other party—whether PK Law, Heisler Law and/or the imposters—"fail[ed] to exercise ordinary care," the loss bearer may have a cause of action under § 3-404(d). If the party "bearing the loss" ends up being Mr. Barrett himself and he believes his former counsel was at fault, he may have other causes of action available too. But none of those causes of actions have been asserted. And the Court is not persuaded that it would be appropriate to prejudge how such causes of action would be adjudicated. Instead, in the current posture, the sole questions presented are (1) whether the Original Agreement is enforceable, which it is, and (2) whether Defendant, or another party on his behalf, has made the payment to "Scott Barrett and his attorneys, The Law Offices of Steve H. Heisler" as required the Original Agreement, which they have not. Accordingly, Plaintiff's motion to enforce that agreement will be granted.

### III.   CONCLUSION

Because Defendant is in material breach of the Original Agreement, the Court GRANTS Plaintiff's motion to enforce the settlement agreement. A separate entry of judgment follows.

Date:   August 2, 2024                                         _____/s/_____
                                                               Adam B. Abelson
                                                               United States Magistrate Judge